## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN W. BURNE, | : | No. 3:07cv588 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| FRANK SIDEROWICZ, DENNIS GIORDANO, ERIN SODIN–MAZIKEWICH, and BRIAN BOGNATZ, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are defendants' motions for summary judgment (Docs. 60, 66) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having been fully briefed and argued, the matter is ripe for disposition.

### BACKGROUND

This is a § 1983 civil rights action concerning the termination of Plaintiff Steven W. Burne ("Burne") from his employment with Pennsylvania Department of Transportation ("PennDOT") in March 2005. Burne was a PennDOT seasonal laborer, initially hired for the 2001-2002 winter program in Luzerne County. (Burne Dep. at 9 to 10 (Doc. 22-9)). Burne was re-hired to work each winter until his termination during the 2004-2005 season. (Id. at 10 to 11). In 2003-2004, Burne had obtained a transfer to the Scranton city depot in Lackawanna County, closer to his home. (Id. at 11).

According to Burne, some of the foremen and management at PennDOT did not like him. (Burne Dep. at 65 to 66). Burne states that Defendant Dennis Giordano, Lackawanna County Manager ("Giordano"), made his employment very uncomfortable by moving him from the Scranton city depot to the Route 6 depot in Clarks Summit, farther from his home, though less senior employees were not similarly moved, and by placing him under Defendant Frank Siderowicz ("Siderowicz"), a foreman who allegedly ostracized him. (Burne Dep. at 11 to 12, 65 to 67; Giordano

Dep. at 6 to 7 (Doc. 22-7); Siderowicz Dep. at 12 to 13 (Doc. 22-6)).[1]

In January or February 2005, Burne allegedly witnessed Siderowicz physically attack another employee, John Fife. (Am. Compl. at ¶ 9 (Doc. 46); Burne Dep. at 21 to 25, 30). Burne alleges he indicated to Defendant Robert Cox, the Lackawanna County Assistant Manger for PennDOT ("Cox"), that he would give a statement regarding the alleged assault. (Burne Dep. at 27; Siderowicz Dep. at 13 to 16). Siderowicz denies having an altercation with Fife and denies being aware that Burne had reported the alleged altercation to anyone. (Siderowicz Dep. at 29 to 30). Cox vaguely recalls an incident between Siderowicz and Fife, which Fife did not want to pursue, but cannot recall whether it was a fight or whether he spoke to Burne about it. (Cox Dep. at 10 to 11, 15). Burne states that Fife was later pressured by his PennDOT superiors not to file a formal complaint. (Burne Dep. at 69 to 70).

On February 10, 2005, Defendant Brian Bognatz, a Carbondale police officer ("Officer Bognatz"), observed Burne run a red light in his PennDOT snowplow and pulled him over. (Bognatz Dep. at 7, 52 to 53). Burne maintains that the light was yellow. (Burne Dep. at 33, 92 to 93). Officer Bognatz did not issue a citation at that time, but took down Burne's license and registration. (Burne Dep. at 33 to 34). Burne was left with the impression that he was let off with a warning, but concedes that Officer Bognatz did not definitively state whether he would issue a citation or not. (Burne Dep. at 93). However, on February 11, 2005, Officer Bognatz telephoned PennDOT and informed Giordano of Burne's traffic violation.

---

[1]Defendants Siderowicz, Cox, Giordano, and Sodin-Mazikewich are referred to collectively as the "PennDOT Defendants" for simplicity and to distinguish them from Defendant Bognatz.

(Giordano Dep. at 23; Bognatz Dep. at 48 to 49, 55-56). Giordano apologized to Officer Bognatz and indicated that his drivers are trained to obey traffic lights. (Giordano Dep. at 23). Officer Bognatz denies any influence was exerted by PennDOT, during this call or at any other time, over his discretion to issue a citation. (Bognatz Dep. at 63 to 64). Officer Bognatz and Giordano consistently state that they did not know each other before the February 11 call, never agreed during the call to issue a citation as a pretext to firing Burne, and never similarly agreed after the call. (Bognatz Dep. at 73 to 74; Giordano Dep. at 65). Defendant Bognatz states that officers have up to thirty days to issue citations for summary offenses, and that traffic tickets are post-cited "very very often." (Bognatz Dep. at 15, 70). Officer Bognatz recalls an inquiry by the mayor of Carbondale regarding Burne's traffic stop but denies any influence being asserted to issue a citation or not. (Bognatz Dep. at 20 to 23, 50). Ultimately, a citation was issued and a copy was faxed to PennDOT. (Giordano Dep. at 32 to 33).

On March 7, 2005, Burne rolled his ankle at work, resulting in a slight fracture. (Burne Dep. at 46 to 49). Burne contends that Siderowicz refused to take him to the hospital. (Id.)

The PennDOT Defendants characterize Burne's traffic incident as the culmination of a series of performance-related incidents including: attendance problems; Carbondale resident complaints for speeding and blowing snow onto porches; and inadequate snow removal. (Giordano Dep. at 9, 35; Siderowicz Work Diary (Doc. 67-9)). Upon receiving the call from Officer Bognatz on February 11, 2005, Giordano contacted Defendant Erin Sodin-Mazikewich, the human resources coordinator at the PennDOT district office ("Sodin-Mazikewich"), and asked how he should proceed. (Giordano Dep. at 32 to 33; Sodin-Mazikewich Dep. at 11 (Doc. 60-6)).

3

Sodin-Mazikewich recommended a pre-disciplinary conference with Burne and his supervisors.  (Sodin-Mazikewich Dep. at 26, 30 (Doc. 60-6)).  Based on Sodin-Mazikewich's guidance, Giordano attempted to contact Officer Bognatz to obtain a witness statement regarding the traffic light incident.  (Giordano Dep. at 26 to 27).  When he was unsuccessful, he asked the mayor of Carbondale to assist in these efforts.  (Id.)

At the March 11, 2005 pre-disciplinary conference Burne was given an opportunity to answer questions regarding the traffic citation.  (Burne Dep. at 53 to 56).  In attendance were Sodin-Mazikewich, Giordano, Siderowicz, Burne, and Burne's union representative.  (Siderowicz Dep. at 48).  At the conclusion of the meeting, Sodin-Mazikewich recommended that Burne be suspended and terminated due to continued safety violations and, specifically, the traffic citation.  (Sodin-Mazikewich Dep. at 33 to 35; Burne Dep. at 54 to 56).

Subsequently, Burne received a letter dated March 14, 2005 that suspended him, pending further review, for "Major Work Rule Violation #3, Willful, deliberate, or repeated violation of Department safety rules . . . ." (Shimko Letter, March 14, 2005 (Doc. 22-9 at 34 to 35)).  Burne received a March 28, 2005 termination letter, specifying Burne's traffic citation as the basis for his termination.  (Shimko Letter, March 28, 2005 (Doc. 22-9 at 36 to 37)).

On April 4, 2005, a hearing on Burne's traffic citation was held before a local magistrate and the citation was dismissed for Officer Bognatz' failure to appear.  (Bognatz Dep. at 37 to 40).  Officer Bognatz states that he opted not to re-file the charge after Burne's attorney told him that Burne risked losing his job at PennDOT.  (Id.)

Plaintiff Burne filed suit in this court on March 28, 2007.  (Doc. 1).  Officer Bognatz moved for summary judgment on March 3, 2008.  (Doc.

22).  Plaintiff Burne amended his complaint on May 20, 2008 leading this court to dismiss Officer Bognatz' March 3 motion as moot.  (Docs. 46, 50).  Burne's amended complaint claims a First Amendment violation and civil conspiracy against both the PennDOT Defendants and Officer Bognatz.  The amended complaint additionally claims Fourth Amendment violations against Officer Bognatz.  Officer Bognatz' answer to the amended complaint asserts cross claims against the PennDOT Defendants for contribution or indemnification.  (Doc. 48).  Subsequently, Officer Bognatz and the PennDOT Defendants separately moved for summary judgment, bringing the case to its present posture.  (Docs. 60, 66).

## JURISDICTION

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).  The court has supplemental jurisdiction over plaintiff's state-law civil conspiracy claims pursuant to 28 U.S.C. § .1367(a).  ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

## LEGAL STANDARD

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

**A. FIRST AMENDMENT CLAIMS**

Because Burne was a government employee, his claim of retaliation for engaging in activity protected under the First Amendment is subjected to the three-step test laid out in Hill v. City of Scranton.  411 F.3d 118, 125

(3d Cir. 2005). First, the employee must show that his activity was protected. Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)); Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997). Second, the employee must show that the protected activity "'was a substantial factor in the alleged retaliatory action.'" Hill, 411 F.3d at 125 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 391 U.S. 563 (1968)); Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996). "Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." Hill, 411 F.3d at 125. See also Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001).

**1. Whether Burne's Speech Was Protected**

A public employee's expression is entitled to First Amendment protection only when (1) the employee's speech addresses a matter of public concern that is not likely to disrupt the efficient operation of the workplace; and (2) the value of the speech outweighs the government's interest in the effective and efficient fulfillment of its responsibilities and duties. Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. "The content of speech on a matter of public concern generally addresses a social or political concern of the community," thus implicating First Amendment concerns, and should benefit "the process of self-governance." Borden v. Sch. Dist. of the Twp. of E. Brunswick, 523 F.3d 153, 169-70 (3d Cir. 2008); Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997). The issue of whether a public employee's expression

is constitutionally protected is a question of law.  Azzaro, 110 F.3d at 975.[2]

The PennDOT Defendants argue that Burne's speech– professing a willingness to give a formal statement about his foreman's alleged assault upon a co-worker, if called upon– is not a matter of public concern because it does not encompass any political, social, or other concern of the community and is only based on private workplace issues.  Burne counters that Siderowicz' violence is a public concern because it involved government employees on tax-payer time.

Considering the content, form, and context of Burne's speech, the court finds that it did not regard a public concern.  The content was largely private, relating to an alleged altercation between particular individuals, albeit involving PennDOT employees.  The form was an internal statement to a supervisor, with no real bearing on the process of self-governance.  As the Supreme Court has stated, "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public

---

[2]  At oral argument, plaintiff's counsel suggested that Burne's speech, particularly his indication to Cox that he would give a formal statement regarding the alleged assault, earns him a "witness status" which should automatically qualify as protected speech.  See Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996) (finding public concern despite private content where public employee was subpoenaed to testify against supervisor in divorce proceeding and attended the trial but was not called upon to testify); Green, 105 F.3d 882 (extending Pro to a government employee's voluntary testimony at a bail hearing).  Because John Fife did not file a complaint or press charges, it would be speculative to consider Burne's speech "potential sworn testimony before an adjudicatory body." Pro, 81 F.3d at 1288 (internal quotations omitted).  Therefore, this court declines Burne's invitation to bypass a thorough inquiry into the content, form, and context of his alleged speech.

official-would plant the seed of a constitutional case." <u>Connick v. Myers</u>, 461 U.S. 138, 149 (1983).[3]  For these reasons, Burne's speech is not protected activity.

## 2. Whether Burne's Speech "Was a Substantial Factor in the Alleged Retaliatory Action"

Even if this court were to find that Burne's speech was a form of protected activity, the record presents no genuine question of fact as to whether it contributed to his termination.  "Although [the Third Circuit has] often noted that the first prong of the First Amendment retaliation test presents questions of law for the court while the second and third prongs present questions of fact for the jury, only <u>genuine</u> questions of fact should be determined by the jury." <u>Hill</u>, 411 F.3d at 127 (internally citing <u>Curinga v. City of Clairton</u>, 357 F.3d 305, 310 (3d Cir. 2004); <u>Baldassare</u>, 250 F.3d at 195)).  Where the plaintiff fails to present sufficient evidence that his protected activity was a substantial factor in his suspension, summary judgment should be granted.  <u>Hill</u>, 411 F.3d at 127.

Here, Burne infers that his willingness to speak out against his supervisor was a tacit factor in his termination.  However, even giving plaintiff the benefit of this inference, the record shows no genuine question of fact as to whether this factor would have been substantial.  First, Siderowicz, the allegedly abusive supervisor, did not make the decision to discipline and terminate Burne and only answered questions during Burne's pre-disciplinary conference with Sodin-Mazikewich.  Defendants further note that Cox, to whom Burne allegedly spoke-out, was not involved

---

[3] Because we find that Burne's speech was not of public concern, we have no occasion to decide whether it outweighs the government's interest in the effective and efficient fulfillment of its responsibilities and duties.

in Burne's suspension or discharge.  Although Giordano was present at the pre-disciplinary conference, no facts show he was aware that Burne had complained about Siderowicz' violence.  Sodin-Mazikewich, who recommended Burne's termination, was unaware of Burne's complaint regarding Siderowicz' attack and made no mention of it at the disciplinary hearing.  Finally, the letters suspending and terminating Burne made no mention of his speech.  Thus, there is no genuine issue of material fact as to whether Burne's speech was a substantial factor in his termination.

## 3. Whether PennDOT Would Have Terminated Burne Despite Burne's Speech

The same evidence which indicates that Burne's speech was not a substantial factor in his termination also establishes that there is no genuine issue of material fact as to whether PennDOT would have terminated Burne regardless of his speech.  Even if Burne's complaint about Siderowicz was protected speech and substantially factored into his termination, the record supports only one view– that Sodin-Mazikewich would have recommended Burne's dismissal solely based on Burne's safety violations and performance problems.  It was Burne's traffic citation which prompted the pre-disciplinary hearing.  This safety violation was Sodin-Mazikewich's only stated basis for her termination recommendation at Burne's hearing and the only reason provided in Burne's termination letter.  Burne makes no showing that he, or any other employee, had made similar mistakes yet avoided similar punishment.

Because Burne's First Amendment retaliation claim fails all three of the Hill requirements, each failure being independently sufficient to scuttle

his claim, defendants are entitled to summary judgment.[4]

## B. FOURTH AMENDMENT CLAIMS

Officer Bognatz seeks summary judgment on Burne's Fourth Amendment claims of unlawful seizure and malicious prosecution.[5] The court will address each claim separately.

### 1. Whether Officer Bognatz Unlawfully Seized Burne

The Fourth Amendment of the United States Constitution guarantees "(t)he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ." A traffic stop constitutes a seizure within the meaning of the Fourth Amendment, but is lawful so long as the stop was reasonable under the circumstances. Delaware v. Prouse, 440 U.S. 648, 653 (1979); U.S. v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. U.S., 617 U.S. 806, 810 (1996). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to

---

[4] Officer Bognatz notes that Burne's amended complaint did not aver a First Amendment infringement by Bognatz. Burne responds, via his brief in opposition, that insofar as Bognatz was involved in a conspiracy to have him terminated, he is necessarily party to First Amendment violations by the PennDOT Defendants. Bognatz repeats that there was no conspiracy between the PennDOT Defendants and Bognatz and that he did not appear at any proceedings. Because we find below that Officer Bognatz did not conspire to have Burne fired, to the extent that Burne tenuously claims a First Amendment violation against Officer Bognatz, the court grants summary judgment in favor of the officer.

[5] Burne does not claim a Fourth Amendment violation by the PennDOT Defendants.

warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Normally, "[t]he question of probable cause in a section 1983 damage suit is one for the jury." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). However, an officer's claim of qualified immunity complicates that proposition. This doctrine shields a police officer from civil liability for his official conduct unless (1) his "actions violated a constitutional right" and (2) "the constitutional right at issue was clearly established. . . ." Saucier v. Katz, 533 U.S. 194, 201-02 (2001). See also Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (stating that a right is "clearly established" if "it would be clear to a reasonable police officer that his conduct was unlawful in the situation confronted."). Furthermore, even if the violated constitutional right was clearly established, a court must still determine whether the officer reasonably believed his actions to be lawful, despite being mistaken in that belief. Orsatti, 71 F.3d at 483. See also Berg, 219 F.3d at 272 (stating the inquiry as "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." (internal quotations omitted)).[6] Thus, although Burne facially presents a question of fact for the jury on the issue of probable cause– i.e. whether the light was yellow or red– the court must determine whether it was objectively reasonable for Officer Bognatz to stop Burne for running what appeared to him to have been a red light, though it may have been yellow.

---

[6] The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

In this case, Officer Bognatz argues that his traffic stop of Burne and subsequent citation were lawful and reasonable because they were based on his own observation of Burne violating traffic laws.  Burne, stating that he only went through a yellow light, argues that there was no probable cause for Officer Bognatz to stop him, rendering his stop unlawful.[7]  Whose account of the traffic stop is correct ultimately does not matter.  Even if Burne was correct that the light was yellow, Officer Bognatz' mistaken belief that Burne's light was red would have been sufficient to justify stopping and later citing Burne for a traffic violation, and that action would have been objectively reasonable.  Accordingly, Officer Bognatz' qualified immunity entitles him to summary judgment on Burne's claim of unlawful seizure.

## 2. Whether Officer Bognatz' Prosecution of Burne Was Malicious

Generally, a 42 U.S.C. § 1983 malicious prosecution action requires that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Dibella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (quoting Estate of Smith v. Marasco, 318

---

[7] The fact that the charges against Burne were dismissed is not relevant to this inquiry.  See O'Rourke v. Krapf, 2002 WL 32348933 at *28 (E.D. Pa. 2002) (internal quotations omitted) ("Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitute proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action.").

F.3d 497, 521 (3d Cir. 2003)).  Courts have found that such a claim requires some sort of deprivation of liberty beyond a mere summons to appear in court.  Id. at 603.

Here, Burne argues that the issuance of a citation is the initiation of prosecution, and therefore Bognatz  maliciously prosecuted him. Officer Bognatz notes that he did not attend Burne's trial or re-file charges against him, allowing Burne to avoid prosecution.

Here, the record indicates that Burne has made out, at most, the first two elements of a malicious prosecution claim.  There was a proceeding against Burne initiated by Officer Bognatz' citation, and it was dismissed in Burne's favor.  However, as noted above, Officer Bognatz' citation of Burne was with probable cause because it was based on the officer's personal observations.  Furthermore, the record is devoid of facts indicating malice on the part of the officer.  Finally, Burne's summons to appear in court is not a cognizable deprivation of liberty.  For all of these reasons, Burne's malicious prosecution claim, like his unlawful seizure claim, fails and summary judgment will be granted in favor of Officer Bognatz on each Fourth Amendment claim.

## C.  CONSPIRACY CLAIMS

To sustain a conspiracy claim under 42 U.S.C. § 1983, the plaintiff must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970);  Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" Marchese, 110 F. Supp. 2d at 371 (quoting Panayotides v. Rabenold, 35 F. Supp. 2d 411,

419 (E.D. Pa. 1999)) (other internal citations omitted).

Plaintiff Burne infers a conspiracy between the defendants from the fact that Officer Bognatz did not initially cite Burne, but did later after calling PennDOT.  Burne points out that it was not until after Giordano called Bognatz, and then the Mayor of Carbondale, that a citation was issued.

However, summary judgment was granted above on Burne's First and Fourth Amendment claims, precluding a finding that the defendants deprived Burne of a right secured by the Constitution or laws of the United States.  Adickes, 398 U.S. 144.   Because Burne was not deprived of any constitutional rights by either the PennDOT Defendants or Officer Bognatz, Burne's civil conspiracy claims must fail.  Therefore, summary judgment will be granted to the PennDOT Defendants and Officer Bognatz on Burne's claim of civil conspiracy.

## CONCLUSION

Because there is no genuine issue of fact as to whether the defendants violated Burne's First or Fourth Amendment rights defendants are entitled to summary judgment on these claims.  For the same reason, defendants are entitled to summary judgment on Burne's claims of civil conspiracy.  And appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN W. BURNE,                    :      No. 3:07cv588
             **Plaintiff**        :
             v.                :      (Judge Munley)

FRANK SIDEROWICZ, DENNIS         :
GIORDANO, ERIN SODIN–
MAZIKEWICH, and BRIAN            :
BOGNATZ,
           **Defendants**       :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 10th day of November, 2009, upon consideration of defendants motions for summary judgement, IT IS **HEREBY ORDERED** that:

(1) Defendant Brian Bognatz' motion for summary judgment (Doc. 60) is **GRANTED**.

(2) Defendants Frank Siderowicz, Dennis Giordano, Robert Cox, and Erin Sodin-Mazikewich's motion for summary judgment (Doc. 66) is **GRANTED**.

The Clerk of Court is directed to close this case.

                            **BY THE COURT:**

                            **s/ James M. Munley**

                            **JUDGE JAMES M. MUNLEY**
                            **United States District Court**